UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERNEST RODRIGUEZ; LARRY TWINE; AND RACHEL LUNA,

    Plaintiffs,
v.

ATRIA SENIOR LIVING GROUP, INC.; DIANA SINGER; AND LUIS CARASQUILLO,

    Defendants.

10 Civ. No. _____
ECF

**COMPLAINT**



## PRELIMINARY STATEMENT

Plaintiffs Ernest Rodriguez, Larry Twine and Rachel Luna hereby bring this collective action to recover, *inter alia*, overtime wages, against defendant Atria Senior Living Group, Inc., defendant executive director Diana Singer and defendant maintenance director Luis Carasquillo on behalf of themselves and other similarly situated current or former employees of defendant Atria Senior Living Group, Inc.

## PARTIES, JURISDICTION AND VENUE

1) Plaintiff Ernest Rodriguez resides in Westchester County (Yonkers, NY).

2) Plaintiff Larry Twine resides in Bronx County (Bronx, NY).

3) Plaintiff Rachel Luna resides in Westchester County (Yonkers, NY).

4) Defendant Atria Senior Living Group, Inc. provides senior citizen assisted living facilities in approximately 26 states. With headquarters in Louisville, KY, the defendant has more than eight thousand employees. The defendant operates facilities in New York Sate, including but not limited to Westchester County (Ardsley, NY).

5) Based on information and belief, Defendant Diana Singer resides in Westchester County.

6) Based on information and belief, Defendant Luis Carasquillo resides in Westchester County.

7) The Court has subject matter jurisdiction over this action, pursuant 29 U.S.C. Section 201 *et seq.*; and 29 U.S.C. Section 216(b). The Court has jurisdiction over plaintiffs' pendent state and local law claims, pursuant to 28 U.S.C. Section 1367.

8) Venue is proper because one or more of the events giving rise to this lawsuit occurred in Westchester County.

## FACTUAL ALLEGATIONS

9) Plaintiffs reassert and incorporate by reference the allegations set forth in paragraphs 1 to 8.

10) Atria Senior Living Group, Inc. (hereinafter, "Atria") is an enterprise that is engaged in commerce. Atria operates assisted living facilities in New York State, including, but not limited to Ardsley, NY ("Atria Woodlands").

11) Atria's staff includes, but is not limited to, maintenance, housekeeping and food services employees, who earn hourly wages, and who perform no supervisory, managerial or executive job functions.

12) On or about April 8, 2008, plaintiff Rodriguez commenced work at Atria Woodlands. At all times relevant to this action, his job title was "maintenance technician." Effective December 16, 2009, Atria terminated his employment.

13) Approximately one decade ago, Plaintiff Twine commenced to work at the same facility (now know as Atria Woodlands). His was and remains an hourly wage earner, who works as a maintenance technician for defendant.

2

14) In September 2009, Plaintiff Rachel Luna commenced work at Atria Woodlands. She was and remains an hourly wage earner, who works in food services as a "utility" employee, i.e., dishwasher

15) Defendant Diana Singer is the executive director at Atria Woodlands.

16) Defendant Luis Carasquillo is the maintenance director at Atria Woodlands.

### FIRST CAUSE OF ACTION:
### FAIR LABOR STANDARDS ACT
### Claim for Overtime Wages

17) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 through 16.

18) Plaintiffs invoke 29 U.S.C. § 207(a)(1), which provision imposes a requirement that employers must remit to all employees covered by FLSA overtime pay of at least one and one-half times their regular wages for any hours they work in excess of forty hours per week.

19) Plaintiffs claim that Atria wrongfully failed to remit overtime wages to them and to similarly situated hourly rate wage earning housekeeping, maintenance and food services staff. They seek to recover said unpaid overtime pay, together with liquidated damages, pursuant to the collective action mechanism that is codified under 29 U.S.C. § 216(b).

20) Section 13 of the Fair Labor Standards Act, 29 U.S.C. §213, (hereinafter, "FLSA") exempts certain categories of employees from the overtime pay obligations set forth under §7(a)(1) of the FLSA. None of the FLSA exemptions apply to plaintiffs. None of the FLSA exemptions apply to the class of their similarly situated current or former coworkers, who worked at either the Ardsley, NY facility ("Atria Woodlands") as hourly wage earning housekeeping, maintenance or food services staff.

21) At all times, Atria was an "employer" within the meaning of 29 U.S.C. §203.

22) Atria employed Mr. Rodriguez as an hourly rate employee. Mr. Rodriguez's hourly wage was $15.45 per hour. Mr. Rodriguez is similarly situated to maintenance workers employed at Atria Woodlands.

23) Atria employs Mr. Twine as an hourly rate employee. He earns $ 11.55 per hour. Mr. Twine is similarly situated to housekeepers employed at Atria Woodlands.

24) Atria employs Ms. Luna as an hourly rate employee. . She earns an hourly wage of $9.32 per hour. Ms. Luna is similarly situated to food services staff workers employed at Atria Woodlands.

25) Based on information and belief, plaintiffs and similarly situated employees are victims of a common policy or plan implanted by defendant that violated the law as follows:

   a) based on information and belief, bonuses earned by managers, including but not limited to defendant Diana Singer, are tied to the amount of money that "saved" on overtime;

   b) through its managers, including but not limited to defendant Singer, defendant Atria subjected plaintiffs and similarly situated employees to a company-wide policy and practice that deprived them of overtime compensation of at least one and one-half times their regular wages for any hours worked in excess of forty hours per week, which acts and omissions violated 29 U.S.C. § 207(a)(1);

   c) management, including but not limited to defendant Singer, regularly assign and have assigned the plaintiffs and similarly situated employees to work more than a 40-hour long workweek, yet typically refused to pay the overtime wages due for said work;

   d) whenever plaintiffs or similarly situated employs would clock-in early to perform assigned work, management, including, but not limited to, defendant Singer and defendant maintenance director Luis Carasquillo, would refuse to authorize payment of

overtime wages, and sometimes would issue a disciplinary warning to the offending employee;

e) based on information and belief, defendant Carasquillo expressly claimed that he could not pay early clock-in, overtime hours without defendant Singer's approval;

f) in repeated instances, defendant Carasquillo explained to plaintiff Rodriguez that defendant Singer does not like to authorize early clock-in, overtime wages, because "if employees get too much overtime, she get's a lower bonus";

g) in July 2009, Mr. Rodriguez worked 48 hours painting outdoor areas of the facility, and was paid for only 40 hours of work, because, according to defendant Carasquillo, defendant Singer said no to overtime;

h) during one weekend in July 2009, defendant Carasquillo called Mr. Rodriguez from NJ, and requested that he go to Atria Woodlands to perform emergency repair work caused by a flood and to refrain from punching in because "I will fix the hours, and will take care of it." Defendant Carasquillo later refused to remit overtime pay to Mr. Rodriguez for said work, because he "didn't punch in";

i) during all times relevant to this action, management, including, but not limited to, defendants Singer and Carasquillo, routinely would require plaintiff Rodriguez, plaintiff Twine and similarly situated employees to sign a "correction" sheet, so as to authorize management's deletion of "on the books," clocked-in overtime hours;

j) during all times relevant to this action, management, including, but not limited to, defendant Singer and her managerial subordinates (Eric), routinely require Ms. Luna and similarly situated employees to sign a "correction" sheet, so as to authorize management's deletion of "on the books," clocked-in overtime hours;

k) each work day, Ms. Luna reports to work early (60 to 90 minutes before her official start time), and works off the books with the knowledge of her boss (Eric) until 11:00 a.m. when she clocks in, and each work day, Ms. Luna clocks out anytime between 7:30 p.m. and 8:00 p.m., yet she earns wages of 41 hours per week;

l) defendant Atria has required plaintiffs and similarly situated employees to work overtime hours "off the books," and received zero monetary compensation for said hourly job performance;

m) management, including but not limited to defendants Singer and Carasquillo, knowingly have required plaintiffs and similarly situated employees to work off the books upon early arrival to work; and

26) Defendant Atria has failed to maintain accurate records of overtime hours worked by plaintiffs and similarly situated employees, in violation of the Fair Labor Standards Act, §11(c), 29 U.S.C. §217, and said failure is evidence of "willfulness" that warrants the extension of the statute of limitation from two to three years.

27) Defendants Atria, Singer and Carasquillo willfully and knowingly have failed to remit minimum wages, straight-time wages and overtime compensation for each hour worked in excess of 40 hours in a workweek.

28) Defendant Atria requires its housekeepers, dishwashers and maintenance technicians to wear uniforms. Atria refuses to supply uniform/footwear and uniform/pants to its housekeepers, maintenance technicians and dishwashers. Rather these employees are required to purchase their own footwear. Plaintiff Rodriguez was exposed to a great deal of bacteria during the course of performing his job duties, such as plumbing and toilet repair work. Mr. Rodriguez spent no less than $280.00 on footwear (four pairs), $176 on pants (eight pairs), $400 on

coats (for salting pavement during winter months), and spent his own money cleaning said garments. Plaintiff Twine is exposed to a great deal of dirt during the course of performing his job duties. He spends his own money on footwear and pants, and cleans these garments at his own expense. Plaintiff Luna is exposed to a great deal of water as she performs her dishwashing and floor hosing job duties. Ms. Luna spends her own money on pants and footwear, and cleans these garments at her own expense. Atria requires these employees to maintain/clean these uniforms at their own expense and effort. Atria has refused to pay any amount of reimbursement. Based on information and belief, the expense of purchasing and cleaning these uniforms cut into minimum and overtime wages.

29) Defendants Atria, Singer and Carasquillo are liable to the plaintiffs and to prospective opt-in plaintiffs for wages, *inter alia*, overtime wages, pursuant to the FLSA, including, but not limited to, Section 7, 29 U.S.C. § 206 and 207.

### SECOND CAUSE OF ACTION:
### FAIR LABOR STANDARDS ACT
### Claim for Retaliation

30) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 to 29.

31) Plaintiffs Twine and Luna asserts the allegations in this cause of action on their own behalf as named plaintiffs.

32) During the past several weeks, Plaintiff Twine and prospective opt-in plaintiffs have indicated to Atria their interest in asserting FLSA wage claims. Plaintiff Twine has complained about failure to pay overtime wages. Repeatedly during the past several weeks, Defendant Singer has announced in front of witnesses that she will fire any employee who becomes involved in the instant case to recover overtime wages.

33) Plaintiff Luna has experienced heightened scrutiny of her work, and fears for her job.

34) Defendant Singer falls within the definition of "any person," which term is defined under 29 U.S.C. §215(a)(3).

35) Plaintiffs Twine and Luna have suffered and continue to suffered worsened terms and conditions of employment as a result of their federal complaints.

36) Defendants Atria and Singer are liable to the Plaintiff Twine for violations of FLSA's anti-retaliation and anti-discrimination provisions, including, but not limited to, Section 15, 29 U.S.C. § 215(a)(3).

### THIRD CAUSE OF ACTION:
### NEW YORK LABOR LAWS
### Claim for Overtime Wages

37) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 to 36.

38) Plaintiff Twine asserts the allegations in this cause of action on his own behalf as an individual plaintiff.

39) For six years (and more), Plaintiff Twine has been denied overtime wages for work that he has performed on behalf of Atria and its predecessor-in-interest.

40) Based on the acts and omissions alleged under the FLSA claim (first cause of action), Atria is liable to Plaintiff Twine for knowingly failing to remit proper wages during the past six years, pursuant to state statutes governing minimum wages, straight-time and overtime compensation, including but not limited to, New York Comp. Code R. & Regs, tit. 12, Section 142-2.2 and N.Y. Labor Laws ("NYLL") 650, 663 *et seq.*

## FOURTH CAUSE OF ACTION:
## NEW YORK LABOR LAWS

41) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 to 40.

42) Plaintiff Rodriguez asserts the allegations in this cause of action on his own behalf as an individual plaintiff.

43) In addition to the acts and omissions alleged under the FLSA claim (first cause of action), beginning June 21, 2009 (when Mr. Rodriguez sought a reasonable accommodation of his disability) until October 22, 2009 (the last day that he reported to work), three to four times a week, maintenance director Carasquillo would interrupt Mr. Rodriguez's lunch break, and demand that he promptly perform a work assignment. By so doing, Mr. Rodriguez was denied a break, and was forced to eat on the fly or to altogether skip lunchtime. Atria refused to compensate him for the lost half-hour lunch break.

44) Atria is liable to Mr. Rodriguez for knowingly failing to remit proper wages, pursuant to state statutes governing minimum wages, straight-time and overtime compensation, including but not limited to, New York Comp. Code R. & Regs, tit. 12, Section 142-2.2 and N.Y. Labor Laws ("NYLL") 650, 663 *et seq.*

## FIFTH CAUSE OF ACTION:
## HUMAN RIGHTS LAW - DISABILITY DISCRIMINATION

45) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 to 44.

46) Plaintiff Rodriguez asserts the allegations in this cause of action on his own behalf as an individual plaintiff.

47) Mr. Rodriguez suffers from a "disability" as the term is defined under New York Exec. Laws, §292.21.

48) Mr. Rodriguez was, at all relevant times, an "employee" as the term is defined under New York Exec. Laws, §290 *et seq.*

49) Atria was and remains, at all relevant times, an "employer" as the term is defined under New York Exec. Laws, §290 *et seq.*

50) Atria discriminated against Mr. Rodriguez when, following his surgery dated March 18, 2009 and recovery, Atria (a) refused to grant him a reasonable accommodation in the form of weight-lifting restrictions to his job tasks; and (b) subjected him to harassment and worsened terms and conditions of employment.

51) The worsened terms and conditions of employment included the following: Three to four times a week, management refused to permit him to take an uninterrupted lunch break, in an effort to force him to quit his job. Also, management routinely demanded that he lift heavy furniture, despite the fact that the maintenance technician job description excludes "moving furniture" as a job task, and imposes a weight lifting restriction of 50 lbs.

52) Mr. Rodriguez worked as a "maintenance technician." Atria's written policy imposed a weight lifting restriction for this job position.

53) On March 18, 2009, Mr. Rodriguez underwent surgery to address a "right D5 angular deformity" in the rotator cuff of his right shoulder.

54) On June 20, 2009, Mr. Rodriguez returned to work, and informed his supervisor (maintenance director Luis Carasquillo) that his physician had prescribed a weight lifting restriction of 30 lbs. His supervisor requested a doctor's note. On June 21st, Mr. Rodriguez

submitted to Human Resources (Joanne Riley) a doctor's note that prescribed a 30-lb weight lifting restriction.

55) Management ignored the doctor's note, as well as Atria's written company policy, and commenced to subject Mr. Rodriguez to worsened terms and conditions of employment – extreme heavy lifting assignments and a refusal to permit him to take uninterrupted lunch breaks.

56) On June 20, 2009, maintenance director Carasquillo informed Mr. Rodriguez that he could work at Atria if he was "one hundred percent," and that he otherwise would have to quit. The maintenance director repeated this statement on several other occasions.

57) On June 20, 2009, in response to Mr. Rodriguez's statement that his physician had prescribed "light duty" to facilitate his recover, maintenance director Carasquillo said, "You can't get light duty on disability, only on workers' compensation." The maintenance director also said, "To work here you have to have full recovery."

58) Between June 21 and October 22, 2009, maintenance director Carasquillo routinely demanded that Mr. Rodriguez lift heavy furniture, despite the fact that the job description for maintenance technician (a) excludes "moving furniture" as a job task, and (b) poses a weight lifting restriction of 50 lbs.

59) Between June 21 and October 22, 2009, management repeated instructed Mr. Rodriguez to move furniture, *e.g.* sofas and dressers, despite their excessively heavy weight. Mr. Rodriguez recalls that he would ask, "Why do you send me to do this knowing that I had surgery?" Maintenance director Carasquillo constantly would respond, "To work here you have to have full recovery."

60) Between June 21 and October 22, 2009, Mr. Rodriguez repeatedly complained to human resources that he objected to the heavy weight lifting assignments that were assigned to him by maintenance director Carasquillo. In each instance, human resources responded, "It's your job."

61) At no time did defendant Atria engage Mr. Rodriguez in an "interactive process" to evaluate his request for light duty/ restricted weight-lifting assignments.

62) On October 22, 2009, management insisted that Mr. Rodriguez should interrupt his lunch break, and directed him to promptly remove a 480lb Coca-Cola vending machine. The decision-makers were maintenance director Carasquillo and the facility's executive director Diane Singer.

63) When instructed to remove the vending machine, Mr. Rodriguez responded (in paraphrase), "Atria has a contract with Coca-Cola, and management should wait for Coca-Cola's workers' to move the machine." Maintenance director Carasquillo responded (in paraphrase) that Atria received complaints from the senior citizen residents about the vending machine, management wants to satisfy its residents, and you must remove the vending machine now, or we will fire you.

64) A coworker (Carl Johnson) offered to assist Mr. Rodriguez move the vending machine. Notwithstanding his severe physical pain and restricted ability to move his right shoulder, Mr. Rodriguez started to lift the vending machine, so as to avoid job dismissal. As he and his coworker lifted the machine, Mr. Rodriguez heard a pop in his shoulder.

65) On October 23, 2009, Mr. Rodriguez's physician issued a doctor's note that the patient was "incapable" of work. Subsequently, the physician memorialized information as follows:

    a) "Right shoulder pain while lifting soda machine at work, likely re-tear of the rotator cuff. . . . The patient had undergone a right-sided rotator cuff surgery . . . He recovered well and returned to work in June 2009.. . . The right shoulder has range of motion from 0 to 90 degrees forward reflexion [sic], abduction 0 to 90 degrees, external rotation 0 to 75 degrees, and internal rotation to the sacrum." Report dated October 26, 2009.

    b) "The patient has weakness of rotator cuff strength. He has pain on forward elevation and abduction." Report dated November 9, 2009.

    c) "He reportedly feels a pinching sensation in the right shoulder and difficulty moving the shoulder secondary to pain. He has intermittent global numbness of right hand." Report dated November 24, 2009.

66) A senior manager (Chuck) informed Mr. Rodriguez that he would not fired, because the injury occurred on the job. However, HR said that it would permit Mr. Rodriguez leave for only 30 days, and attributed the decision to defendant Diana Singer.

67) Mr. Rodriguez's physician scheduled him for a second surgery. In or about early November, Mr. Rodriguez informed his boss Mr. Carasquillo that, beginning on December 9, 2009, he would need a couple of weeks off to undergo the second surgery and to recover from said surgery. Mr. Carasquillo flatly denied the request, and explained, "You only have nine more days of FLMA. The Company doesn't permit leave of absence [that exceeds the 12-week] FLMA."

68) At no time did defendant Atria engage Mr. Rodriguez in an "interactive process" to evaluate his request for extra leave of absence.

69) Mr. Rodriguez had surgery on December 9th. By letter dated December 15, 2009, Atria's executive director terminated Mr. Rodriguez's employment.

70) As a result of the job termination, Complainant was suffered financial difficulties. In addition, he has suffered emotional distress, such as anxiety and insomnia.

71) Defendant Atria engaged in an unlawful discriminatory practice relating to employment in violation of Article15 of the Executive Law of the State of New York ("Human Rights Law"), because of animus against disabled employees who require a reasonable accommodation.

72) Defendant Atria and defendant Carasquillo are liable to plaintiff for disability discrimination in violation of the New York Exec. Laws §296 *et seq.*

## SIXTH CAUSE OF ACTION:
## HUMAN RIGHTS LAW - RETALIATION

73) Plaintiffs herein reassert and incorporate by reference the allegations set forth in paragraphs 1 through 72.

74) Mr. Rodriguez asserts the allegations in this cause of action on his own behalf and as an individual plaintiff.

75) Defendant Atria engaged in an unlawful retaliatory practice relating to employment in violation of Article15 of the Executive Law of the State of New York ("Human Rights Law"), because Mr. Rodriguez engaged in the protected activity of requesting a reasonable accommodation of his disability.

76) After Mr. Rodriguez requested a "light duty," defendant Atria retaliated against Mr. Rodriguez by imposing adverse terms and conditions of employment on him, including but not limited to, repeated lunch break interruptions and heavy lifting job assignments.

77) Atria also retaliated against him as follows:

   a) In or about July 2009, Mr. Rodriguez applied for a promotion to maintenance director at the Atria facility located in Rye, NY. Danny Parillo, then senior manager over several of Atria's facilities in the New York area, encouraged Mr. Rodriguez to submit the application. In September 2009, Mr. Rodriguez talked to human resources concerning the status of his application, and received no feedback.

   b) In November of 2008, defendant Singer issued a glowing letter of recommendation for Mr. Rodriguez. In September 2009, Mr. Rodriguez asked defendant Singer for an updated letter of recommendation, because he wanted to submit it in support of his application for a job promotion within Atria. She refused.

78) Based on information and belief, after Mr. Rodriguez re-tore his right rotator cuff on October 22, 2009, and thereafter requested extended leave of absence, Defendant Atria retaliated against Mr. Rodriguez by (a) its refusal to comply with the company's internal policies and procedures regarding health care benefits, and (b) its violation of federal laws, Consolidated Omnibus Reconciliation Act ("COBRA"), governing notice of health insurance carry-over benefits.

79) On March 10, 2010, this action was filed in this Court. On March 13, 2010, Manager Kiren Kennedy telephoned Mr. Rodriguez's Yonkers, NY home from Atria's Ardsley, NY offices. Mr. Kennedy informed Mr. Rodriguez that he knew about the lawsuit. Mr. Kennedy proceeded to question Mr. Rodriguez about Mr. Rodriguez's motivations in suing Atria. Mr. Kennedy then tried to pressure Mr. Rodriguez into arranging a face-to-face meeting with him. When it became apparent to him that a human resources manager was in the room with Mr. Kennedy, Mr. Rodriguez abruptly ended the telephone conversation.

80) On or about March 15, 2010, management informed one or more housekeepers and maintenance workers at Atria Woodlands that they are to refrain from talking to or contacting Mr. Rodriguez. These individuals are close social friends of Mr. Rodriguez, who suffers from the loss of their companionship.

81) Defendant Atria is liable to plaintiff for one or more acts of retaliation in violation of New York Exec. Laws §296 *et seq.* ("Human Rights Laws").

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand a TRIAL BY JURY;

AND WHEREFORE, plaintiffs seek relief in the following form and to the following extent:

a)  On behalf of themselves as an individual plaintiffs, Messrs. Rodriguez and Twine seek relief as follows:

   (i) overtime wages in an amount to be determined at trial, pursuant to NYLL;

   (ii) NYLL liquidated damages (25%) in an amount to be determined at trial;

   (i) actual, compensatory and punitive damages arising under applicable anti-disability discrimination laws, including but not limited to, New York Exec. Laws §296 *et seq.*, in an amount to be determined at trial;

   (ii) actual, compensatory and punitive damages arising under applicable anti-retaliation laws, including but not limited to, New York Exec. Laws §296 *et seq.*, in an amount to be determined at trial.

b)  On behalf of himself as an individual plaintiff, Plaintiff Twine seeks relief as follows:

   (i) injunctive relief, including a preliminary injunction, against defendants Atria and Singer, pursuant to FLSA, 29 U.S.C. §215(a)(3); and

    (ii) monetary relief, including but not limited to actual, compensatory and punitive damages, pursuant to FLSA, 29 U.S.C. §215(a)(3).

c) On behalf of themselves and the opt-in plaintiffs, Plaintiffs Rodriguez, Twine and Luna seek relief as follows:

    (i) overtime wages, in an amount to be determined at trial, pursuant to the Fair Labor Standards Act ("FLSA");

    (ii) FLSA liquidated damages (100%), in an amount to be determined at trial;

    (iii) costs and disbursements;

    (iv) prejudgment interest;

    (v) post-judgment interest;

    (vi) reasonable attorney fees; and

    (vii) such other and further relief as the court deems just and proper.

DATED: New York, NY
     April 15, 2010

                     _____
                     Chinyere Okoronkwo, Esq. (CO3339)
                     Attorney for Plaintiffs
                     Law Office
                     40 East 94th Street
                     New York, NY 10128
                     (212)537-9284; (917)817-6528